IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE E. DECKER,
On Behalf of Herself
and All Others Similarly Situated,

    Plaintiff,

v.

ADVANCED CALL CENTER
TECHNOLOGIES, LLC, et al.

    Defendants.

Civil Action No. 1:14-cv-00795-GJQ
(Transferred from the Eastern District
of Michigan, 2:14-cv-12597-GAD-MJH)

ORAL ARGUMENT REQUESTED

**SYNCHRONY BANK'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, TO STAY THE MATTER AND DISMISS THE CLASS ALLEGATIONS, AND REQUEST FOR ORAL ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and this Court's Local Civil Rule 7.2, Defendant Synchrony Bank, was formerly known as GE Capital Retail Bank ("Synchrony") requests that this Court (a) compel Plaintiff Christine E. Decker ("Decker") to submit her claims to arbitration to be heard on an individual basis and (b) dismiss the Complaint in this matter or, in the alternative, stay the matter while dismissing the class allegations in light of Decker's contractual agreement not to participate in a class action. In support of the Motion, Synchrony states as follows:

**1.     INTRODUCTION**

This case in its entirety should be sent to arbitration on an individual basis because the claims relate to the Decker's Synchrony JCPenney-branded account as to which the operative Synchrony Credit Card Account Agreement has a valid and enforceable arbitration clause and

class action waiver. Synchrony originated the account with Decker as the accountholder. Decker agreed to a credit card agreement that contained a conspicuous, valid, and mandatory arbitration clause with a class action waiver provision and also to a subsequent change in terms, which contained a nearly identical arbitration provision and class action waiver provision.

Decker defaulted on her payment obligations for the account by failing to make all of the required monthly installment payments. Now, Decker has filed this lawsuit against Synchrony asserting a claim for violation of the Fair Debt Collection Practices Act (*See Count I*, Cmplt., Dkt. # 1) and for violation of the Michigan Collection Practices Act (*See Count II*, Cmplt., Dkt. # 1). Pursuant to the unambiguous language of the account agreement and the change in terms, Synchrony now moves the Court to compel arbitration and to dismiss this lawsuit with prejudice, or in the alternative, to stay all proceedings in this action pending arbitration while dismissing the class allegations.[1]

## 2. BACKGROUND

Synchrony is a federal savings association that, among other things, issues credit cards to consumers as part of a number of private-label programs. *See* **Exhibit 1** (Declaration of Martha Koehler ("Koehler Decl."), at ¶¶ 2, 7). Synchrony was formerly known as GE Capital Retail Bank, until a name change that became effective on or about June 2, 2014. Koehler Decl., ¶ 4.

Synchrony has a number of credit card programs, including a JCPenney program under which it issues JCPenney-branded cards. This program allows consumers to pay for clothing and other goods at JCPenney. Koehler Decl., ¶ 7. Plaintiff Decker was the accountholder for a JCPenney-branded credit card account with an account number ending in 1318 (the "Account")

---

[1] Synchrony denies that Decker's claims have any merit whatsoever, and reserves and does not waive, any and all defenses to Decker's claims.

issued by Synchrony.  On April 20, 2012, Decker applied for and was approved for the Account. Synchrony approved Decker's application electronically, which is reflected in the "GE Card Services Application Profile – Approved" (the "Application Profile").  A copy of the Application Profile, with redactions to protect Decker's personal information is as Exhibit 1 to the Koehler Decl.

At the time of her electronic application, Decker received and contented to certain initial disclosures (the "Initial Disclosures") that informed her, "a complete credit card agreement governing your account will be sent to you along with a credit card."  Koehler Decl., ¶¶ 8-10. The Initial Disclosures also informed Decker that the complete credit card agreement that she would receive with her credit card "**includes a dispute and claim resolution provision (including arbitration) that limits my rights unless I reject the provision by following the provision's instructions.**"  Koehler Decl., ¶ 10, and Exhibit 2 thereto (Initial Disclosures), p. 4.

Decker received a copy of the complete JCPenney Rewards Credit Card Account Agreement (the "Agreement") for the Account when she received her credit card in the mail. Koehler Decl., ¶¶ 6, 11, 17-18.  The credit card for the Account was activated on April 26, 2012, by a call being placed to Synchrony from the telephone number provided on the application for the Account and the identification of the account number on the received credit card.  *Id*. at ¶ 11. The Agreement states, "By opening or using your account, you agree to the terms of this Agreement. This Agreement starts when (i) you give us an account application we approve or (ii) you use your account or let someone else use it, whichever occurs first." *Id.* at ¶ 11, and Exhibit 3 thereto (Agreement), ¶ 1.

The Agreement further requires arbitration of "any dispute or claim between you…and us, if the dispute or claim arises from or relates to your Account."  Koehler Decl., ¶ 12, and

Exhibit 3 thereto (Agreement) at ¶ 23.  The dispute over whether Synchrony properly collected the debt for the Account is plainly within the scope of the arbitration clause as it is a "dispute or claim…[that] arises from or relates to [Decker's] Account."  The Change in Terms (the "CIT") that Synchrony mailed to Decker with her billing statement dated June 29, 2012, contains similar language requiring arbitration of "any dispute or claim…if it relates to your account."  Koehler Decl., ¶¶ 6-7, 12-19, and Exhibit 4 thereto (CIT), pp. 1-2.   After the Agreement and the CIT were sent to Decker, she made purchases using the Account, received monthly billing statements, and made payments on the account in response to the statements sent to the address that Decker included on her application.  Koehler Decl., ¶¶ 18-19.  Moreover, in light of the Supreme Court's recent decisions regarding class action waivers, the class action waiver in the arbitration provision is unassailable.[2]  Thus, this dispute must be compelled to arbitration on an individual basis.

3.     **THE ARBITRATION CLAUSE IN THE AGREEMENT AND IN THE CHANGE OF TERMS**

The Agreement contained an arbitration provision stating as follows:

**23. DISPUTE AND CLAIM RESOLUTION (INCLUDING ARBITRATION) PROVISION.**

**General/Requirement to Arbitrate.  PLEASE READ THIS PROVISION CAREFULLY.  UNLESS YOU SEND US THE REJECTION NOTICE DESCRIBED BELOW, THIS PROVISION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION.  THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH**

---

[2] *See Am. Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2309-12 (2013) (holding a contractual waiver of class arbitration is enforceable under the Federal Arbitration Act even when a plaintiff's cost of individually arbitrating exceeds the potential recovery); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49, 1751-53 (2011) (invalidating judicially-created California rule that class action waivers found in consumer adhesion contracts are unenforceable).

**DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.** This provision replaces any existing arbitration provision with us and will stay in force no matter what happens to your Account, including termination. Upon demand, and except as otherwise provided below, you and we must arbitrate individually any dispute or claim between you, any joint cardholder and/or any additional cardholder, on the one hand; and us, our affiliates, agents and/or jcpenney, on the other hand, if the dispute or claim arises from or relates to your Account. However, we will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) any claim by us that only involves our effort to collect money you owe us. However, if you respond to a collection lawsuit by claiming that we engaged in any wrongdoing, we may require you to arbitrate.

**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY CARDHOLDER WHO IS NOT A JOINT OR ADDITIONAL CARDHOLDER WITH YOU ON YOUR ACCOUNT (AN "UNRELATED CARDHOLDER"), AND YOU AGREE THAT NO UNRELATED CARDHOLDER MAY BRING ANY CLAIMS AGAINST US ON YOUR BEHALF. CLAIMS BY YOU AND BY AN UNRELATED CARDHOLDER MAY NOT BE JOINED IN A SINGLE ARBITRATION.** Only a court may decide whether any part of this paragraph is enforceable. If it is finally determined that this paragraph is not fully enforceable, only this sentence of the Provision will remain in force and the remainder of the Provision will be null and void, provided the court's determination concerning the enforceability of this paragraph shall be subject to appeal.

**Starting an Arbitration.** If you or we elect to arbitrate a claim, the electing party must notify the other party in writing. This notice can be given after the beginning of a lawsuit and can be given in papers filed in the lawsuit. Otherwise, your notice must be sent to GE Capital Retail Bank, Legal Operation, P.O. Box 29110, Shawnee Mission, KS 66201, ATTN: ARBITRATION DEMAND, and our notice must be sent to the most recent address for you in our files. The party seeking arbitration must select as the arbitration administrator either the American Arbitration Association (AAA), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org, (800) 778-7879, or JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com, (800) 352-5267. If neither the AAA nor JAMS is able or willing to handle the dispute, then the parties will resolve their dispute in court.

The arbitration administrator will appoint the arbitrator and tell the parties what to do next. The arbitrator must be a lawyer with at least ten years of legal experience. In making decisions or awarding remedies, the arbitrator must apply

5

the same law and legal principles that would apply in court, but may use different procedural rules. If the administrator's rules conflict with this Provision, this Provision will control.

**Arbitration Location and Fees.** The arbitration will take place by phone or at a location reasonably convenient to you. Upon your request, we will normally pay all the fees the administrator or arbitrator charges, if we believe you are acting in good faith. We will always pay these costs, as well as your legal fees and costs, to the extent required under applicable law or in order for this Provision to be enforced.

**Governing Law.** This Provision is governed by the Federal Arbitration Act (the "FAA"). Utah law shall apply to the extent state law is relevant under Section 2 of the FAA in determining the validity of this Provision. The arbitrator must follow: (1) the substantive law, consistent with the FAA, that would apply if the matter had been brought in court, (2) this Provision, and (3) the administrator's rules. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment on the arbitrator's award.

**Rejecting this Provision. You may reject this Provision, in which case only a court may be used to resolve any dispute or claim.** Rejection will not affect any other aspect of the cardholder agreement. To reject, you must send us a notice within 60 days after you open your account or we first provide you with a right to reject this Provision. The notice must include your name, address and account number, and be mailed to GE Capital Retail Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this Provision.

Koehler Decl., ¶ 12 and Exhibit 3 thereto (Agreement), ¶ 23.

In accord with a provision of the Agreement stating that Synchrony was permitted to "Subject to the requirements and limitations of applicable law … change, add to, or delete any of the terms of [the] Agreement…," Synchrony provided Decker the CIT with her billing statement on or about June 29, 2012. Koehler Decl., ¶¶ 13-19 and Exhibit 3 thereto at ¶ 4.

The arbitration provision in the CIT, stated as follows:

**RESOLVING A DISPUTE WITH ARBITRATION**

**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU**

6

**WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

• **What claims are subject to arbitration**

1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or J. C. Penney Corporation, Inc. if it relates to your account, except as noted below.
2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.
3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

• **No Class Actions**

**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.** If a court determines that this paragraph is not fully enforceable, only this sentence will remain in force and the remainder will be null and void, and the court's determination shall be subject to appeal. This paragraph does not apply to any lawsuit or administrative proceeding filed against us by a state or federal government agency even when such agency is seeking relief on behalf of a class of borrowers, including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

• **How to start an arbitration, and the arbitration process**

   1. The party who wants to arbitrate must notify the other party in writing. This notice can be given after the beginning of a lawsuit or in papers filed in the lawsuit. Otherwise, your notice must be sent to GE Capital Retail Bank, Legal Operation, P.O. Box 29110, Shawnee Mission, KS 66201, ATTN: ARBITRATION DEMAND. The party seeking arbitration must select an arbitration administrator, which can be either the American Arbitration

>Association (AAA), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org, (800) 778-7879, or JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com, (800) 352-5267. If neither administrator is able or willing to handle the dispute, then the court will appoint an arbitrator.
>2. If a party files a lawsuit in court asserting claim(s) that are subject to arbitration and the other party files a motion with the court to compel arbitration, which is granted, it will be the responsibility of the party asserting the claim(s) to commence the arbitration proceeding.
>3. The arbitration administrator will appoint the arbitrator and will tell the parties what to do next. The arbitrator must be a lawyer with at least ten years of legal experience. Once appointed, the arbitrator must apply the same law and legal principles, consistent with the FAA, that would apply in court, but may use different procedural rules. If the administrator's rules conflict with this Agreement, this Agreement will control.
>4. The arbitration will take place by phone or at a reasonably convenient location. If you ask us to, we will pay all the fees the administrator or arbitrator charges, as long as we believe you are acting in good faith. We will always pay arbitration costs, as well as your legal fees and costs, to the extent you prevail on claims you assert against us in an arbitration proceeding which you have commenced.
>
>**• Governing Law for Arbitration**
>
>This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.
>
>**• How to reject this section.**
>
>You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to GE Capital Retail Bank, PO Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section.

Koehler Decl., ¶ 14 and Exhibit 4 (CIT), pp. 1-2.  Decker did not exercise her right under the Agreement or the CIT to opt out of the arbitration provisions or the class action waivers contained therein.  Koehler Decl. at ¶¶ 15-16.

**4.  ARGUMENT**

Decker entered into the Agreement, which permitted the CIT, and both the Agreement and CIT are valid and enforceable and require, among other things, that Decker and Synchrony arbitrate any claim that relates to the Account.  *See* Agreement at ¶ 23 and CIT at pp. 1-2, attached to Koehler Decl. as Exhibits 3 and 4, respectively.  The Agreement and the CIT granted Decker the right to reject the arbitration provisions in of the Agreement and the CIT, which contain both enforceable arbitration clauses and class action waiver clauses, but Decker did not exercise that right.  Koehler Decl., ¶¶ 15-16.  Decker initiated this lawsuit requesting that the Court adjudicate her claims against Synchrony, which is within the scope of the binding Agreement.  As a result, Synchrony moves this Court to compel the parties to arbitration and to dismiss this action with prejudice, or in the alternative, to stay all proceedings in this action, pending completion of the arbitration while dismissing the class allegations.

**A.  Standard of Law.**

The FAA governs the enforceability of the agreement to arbitrate in the Agreement.  Where the parties have entered into a valid and binding agreement to arbitrate, the FAA provides that the court "shall on application of one of the parties stay the trial of the action." *See* 9 U.S.C. § 3.  The party aggrieved by the failure or refusal of another to arbitrate may move for an order directing that such arbitration proceed in the manner provided for in the agreement to arbitrate. *See* 9 U.S.C. § 4.

There is a strong policy in favor of arbitration which requires courts to "rigorously enforce agreements to arbitrate."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985); *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003) (noting the liberal federal policy in favor of arbitration agreements); *Southern Systems, Inc. v. Torrid Oven Ltd.*, 105 F. Supp. 2d 848 (W.D. Tenn. 2000) (same).  In fact, the FAA "leaves no place for the exercise of

discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (emphasis in original); *Roney & Co. v. Goren*, 875 F.2d 1218 (6th Cir. 1989) (same).

Moreover, federal law dictates that arbitration agreements are to be construed as broadly as possible, and any doubts must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."); *see also Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568 (6th Cir. 2003) ("When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (internal citation omitted).

As provided in the FAA and confirmed by the Sixth Circuit, a two-part test applies to determine whether a dispute is arbitrable. First, the Court must decide if a valid agreement to arbitrate exists; and second, the Court must find that the specific dispute falls within the substantive scope of the agreement. *See Javitch*, 315 F.3d at 624. Any question relating to the scope of arbitrable issues is resolved in favor of enforcing the agreement to arbitrate. *See, e.g.*, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Highlands*, 350 F.3d at 576-77. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004). As discussed below, this two-part test is met in the instant case. Therefore, Synchrony requests that the Court grant its Motion, compel the parties to arbitration, and dismiss this action with

prejudice, or in the alternative, stay all proceedings in this action pending arbitration while dismissing the class allegations.

### B. The Parties Entered Into A Valid And Enforceable Written Agreement To Arbitrate Plaintiff's Individual Claims.

The FAA specifically provides that arbitration agreements are enforceable according to their terms:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Here, a contract between Decker and Synchrony was formed. Decker opened the Account. *See* Koehler Decl., ¶¶ 8-11. Subsequently, Decker made charges on the Account, received monthly billing statements, and made payments for a period of time. *Id.* at ¶¶ 17-19. The Agreement, which was delivered to Decker with the credit card that she used, stated, "By opening or using your account, you agree to the terms of this Agreement." *Id.* at Exhibit 3. It further states that "you and we must arbitrate individually any dispute or claim…[that] arises from or relates to your Account." Koehler Decl., ¶ 12 at Exhibit 3 thereto, ¶ 23.[3] Decker did not opt out of the arbitration provision in the Agreement, and thus, it is valid and binding. Koehler Decl., ¶¶ 15-16. Subsequently, in accord with the terms of the Agreement, Synchrony mailed the

---

[3] There are a few exceptions to the obligation to arbitrate that are not applicable here: "We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) any claim by us that only involves our effort to collect money you owe us. However, if you respond to a collection lawsuit by claiming that we engaged in any wrongdoing, we may require you to arbitrate." *Id.*

CIT to Decker with her statement dated June 29, 2012.  The CIT set forth an arbitration clause that also requires arbitration of all claims that "relate to" the Account.  *Id.* at ¶¶ 13-14.

Decker agreed to arbitration.  Decker now bears the burden of any challenge to the validity of the Agreement to Arbitrate.  *Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).  *See also Howard v. Wells Fargo Minnesota, N.A.*, 2007 WL 2778664, at *3 (N.D. Ohio Sep. 21, 2007).  Courts may only invalidate arbitration agreements based upon generally applicable contract defenses.  *See* 9 U.S.C. § 2; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996).  A court should uphold and enforce an arbitration agreement even if an arbitrator may later hold the remainder of the contract invalid.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ("It is true . . . that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void.").  Moreover, even when using doctrines of general applicability in examining an arbitration agreement, such as unconscionability, courts are not permitted to employ those doctrines in a manner which would subject arbitration agreements to special scrutiny.  *See, e.g., Perry v. Thomas*, 482 U.S. 483 (1987) ("A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements . . .").

Under this heightened standard, Decker cannot overcome the validity of the agreement to arbitrate in the Agreement, thus the arbitration agreement should be enforced.

    **C.**    **The Scope Of The Agreement To Arbitrate Encompasses Decker's Claims In This Action.**

Decker 's claims against Synchrony directly relate to her Account and thus  fall within the arbitration clause.  The Supreme Court dictates that a presumption of arbitrability exists

12

where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *Highlands Wellmont Health Network, Inc.*, 350 F.3d 568, 576–77 (6th Cir. 2003), *quoting AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986). The presumption in favor of arbitrability "is particularly applicable where the [arbitration] clause is . . . broad," *id*., as it is in this case. Indeed, the Supreme Court in *Green Tree Financial Corp.-Alabama v. Randolph* made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." 531 U.S. 79, 91 (2000). In examining a similar arbitration clause, the District Court for the Northern District of Ohio stated:

> [w]hen faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. . . . Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*Davisson*, 644 F. Supp. 2d at 959 (quoting *Solvay Pharms. v. Duramed Pharms., Inc.,* 442 F.3d 471, 482 n.10 (6th Cir. 2006) (emphasis in original)).

The *Davisson* court noted that because the arbitration clause "provides for arbitration of *any* dispute, it is broad in scope." 644 F. Supp. 2d at 959 (emphasis in original). The court went on to find the opposing party's claims pursuant to three different state consumer protection statutes and for conversion and trespass to chattel "clearly fall within the Contract's definition of 'Dispute,'" and thus "all of the parties' claims are arbitrable." *Id*. at 960. Likewise, in the instant case, Decker's two claims are arbitrable under the very broad terms of the Agreement to Arbitrate (e.g., Decker is required to arbitrate "any dispute or claim." Agreement at ¶ 23 and CIT at p. 1, attached as Exhibits 3 and 4 to the Koehler Decl.

Other courts considering arbitration provisions that are substantively similar or identical to the provisions contained in Decker's Account Agreement and the CIT, have determined that the parties' arbitration agreements are enforceable and compelled the parties to arbitrate their disputes. *See, e.g., Shetiwy v. Midland Credit Management*, 595 F. Supp. 2d 469, 472, 475 (S.D.N.Y 2013) (granting motion to compel arbitration of claims filed against a variety of credit card issuers and servicers including GE Capital, where, as here, the cardholder agreements contained arbitration provisions requiring parties to arbitration claims related to their credit card account, and that expressly provided that the provisions were to be governed by Utah law and the FAA); *Clemons v. GE Money Bank*, No. 11-CV-00210, 2012 WL 5868659 (E.D. Wis. Nov. 20, 2012) (granting defendant's motion to compel arbitration, finding that plaintiffs' agreements to arbitrate any dispute "that relates in any way to your Account" were enforceable and that plaintiffs' claims relating to their credit card accounts were within the scope of their arbitration agreements); *see also Martin v. Cavalry SPV I, LLC*, No. 13-88-GFVT, 2014 WL 1338702 (E.D. Ky. Mar. 31, 2014) (compelling cardholder to arbitrate her claims against subsequent purchaser of her charged-off account, where claims related to a credit card account originally issued by GE Capital Retail Bank and the account agreement contained arbitration provisions).

Decker's claims against Synchrony fall within the ambit of the Agreement to Arbitrate in the Agreement and the CIT as that claim relates to and arises out of the Agreement including, without limitation, Decker's default on the Account and the collection of amounts due under the Agreement. (*See generally*, Cmplt., Dkt. # 1.) As such, Decker is required to arbitrate her claims against Synchrony.

### D. The Court Must Compel Decker To Arbitrate Her Claims On An Individual Basis.

Because Decker's claims are subject to arbitration, Synchrony requests that this action be dismissed with prejudice. The arbitration must be held on an individual claim and not on a class basis. Both the Agreement and the CIT state: "**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION.**" Agreement at ¶ 23; CIT at p. 1. (emphasis in original). Therefore, the plain language of the class action waiver provisions bars Decker from participating in this class action lawsuit against Synchrony.

At this point, there can be no doubt that the prohibitions in the Agreement and the CIT against participating in a class action are enforceable. In two recent cases the U.S. Supreme Court confirmed that a contractual waiver of the right to pursue class claims is enforceable, because under the FAA the parties may agree to limit the issues subject to arbitration and may agree to limit with whom the parties will arbitrate. *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309-12 (2013) (holding a contractual waiver of class arbitration is enforceable under the FAA even when a plaintiff's cost of individually arbitrating exceeds the potential recovery); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49, 1751-1753 (2011) (invalidating judicially-created California rule that class action waivers found in consumer adhesion contracts are unenforceable). This rule reflects the "liberal federal policy favoring arbitration" found in Section 2 of the FAA and the "fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (omitting internal citations). It also reflects the idea that courts "must rigorously enforce arbitration agreements according to their terms." *Am. Express Co.*, 133 S. Ct. at 2309 (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). In light of Supreme Court precedent, courts will hold that a contractual class action

15

waiver provision is enforceable.  *See, e.g., Jones v. Sallie Mae, Inc.*, No. 13-cv-837, 2013 U.S. Dist. LEXIS 170968, at *17-18 (M.D. Fla. Sept. 20, 2013) (concluding that the FAA preempts a finding that a class action waiver is inherently unconscionable).  In sum, a waiver of the right to pursue class claims in arbitration or in court is enforceable.[4]

Therefore, the Court should enforce the class action waiver provisions under the Agreement and the CIT, compel Decker to arbitrate her claims individually and dismiss this action.  As Decker is contractually barred from being a class representative, if the Court chooses to stay the case instead of dismissing it, the Court should still dismiss at least the class allegations.

**5.   CONCLUSION**

For the foregoing reasons, Synchrony Bank, formerly known as GE Capital Retail Bank, respectfully requests that this Court (a) grant this Motion, (b) compel Decker to submit her claims to arbitration to be heard on an individual basis and (c) dismiss the Complaint in this matter or stay the matter while dismissing the class allegations in light of Decker's contractual agreement to not participate in a class action.

                                                         Respectfully submitted,

Dated: August 15, 2014                MCSHANE & BOWIE, P.L.C.

                                                         By:  /s/James R. Bruinsma
                                                         James R. Bruinsma (P48531)
                                                         Ruth A. Skidmore (P58913)
                                                         McShane & Bowie, P.L.C.
                                                         99 Monroe Avenue NW, Suite 1100
                                                         Grand Rapids, MI 49503

---

[4] The Agreement is governed by Utah law to the extent state law applies.  *See* Agreement, Important Information About This Agreement attached as Exhibit 3. to the Koehler Decl.  Utah law expressly authorizes class action waivers in connection with credit agreements.  *See* Utah Code § 70C-4-105.

Tel: (616) 732-5000
Fax: (616) 732-5099
Jrb@msblaw.com
Ras@msblaw.com
*Counsel for Synchrony Bank f/k/a GE Capital Retail Bank*